**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 35767**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2009 Opinion No. 75** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: December 1, 2009** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| DAVID M. ESTES, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Hon. Carl B. Kerrick, District Judge; Hon. Jay P. Gaskill, Magistrate.

District court's appellate decision affirming magistrate court judgment of guilt on speeding infraction, reversed.

David M. Estes, Lewiston, pro se appellant.

Hon. Lawrence G. Wasden, Attorney General; Rosemary Emory, Deputy Attorney General, Boise, for respondent. Rosemary Emory argued.

_____

LANSING, Chief Judge

David M. Estes appeals from the district court's intermediate appellate decision affirming the magistrate court's judgment in which it found that Estes committed the infraction of speeding, Idaho Code § 49-654(2). Estes asserts that the state trooper's testimony concerning his visual estimate of the speed of Estes' vehicle, standing alone, was insufficient to prove the speeding violation beyond a reasonable doubt.

**I.**

**BACKGROUND**

A state trooper employing a speed detection device stopped and cited Estes for driving 65 miles per hour in a 55-mile-per-hour zone while descending the Lewiston Grade section of U.S. Highway 95. Through discovery, Estes requested that the prosecution identify the speed detection device employed, and he was informed that it was a "Super B" Doppler radar device.

At the ensuing bench trial on the infraction, however, the officer revealed that he instead had used a laser device. Estes objected to admission of the laser reading, and the magistrate excluded that evidence as a sanction for the discovery violation. Estes then moved to dismiss the infraction charge, but the magistrate denied the motion and granted the prosecutor's request to proceed with evidence of the officer's visual estimation of speed.

The officer testified that he had been trained in visually estimating the speed of vehicles and had received certification of the ability to make estimates within 5 miles per hour of the actual speed. He said that he had estimated the speed of Estes' vehicle at 65 miles per hour, 10 miles per hour over the speed limit.

At the close of the case, the magistrate found, based on the officer's testimony, that the State had met its burden to prove the speeding infraction.

Estes appealed to the district court, arguing that the evidence was insufficient to support the magistrate's finding of guilt. Giving deference to the trier of fact, the district court concluded that sufficient evidence of speed was presented at trial and affirmed the judgment. Estes now appeals to this Court.

## II.

## ANALYSIS

Appearing pro se, Estes states his issue on appeal as follows:

> Should the State of Idaho allow courts to convict defendants based solely on the visual estimation of speed by police officers without corroborating those estimates using speed detection devices or other scientific methods?

Addressing this issue, Estes first argues that the prosecution failed to establish that visual estimation of speed is scientifically reliable and, therefore, the officer's testimony was inadmissible under Idaho Rule of Evidence 702. However, the State correctly notes that Estes did not object to the officer's testimony regarding his estimate of the speed of Estes' vehicle. This Court will not address an evidentiary issue not preserved for appeal by a timely and specific trial objection. I.R.E. 103(a)(1); *State v. Bingham*, 116 Idaho 415, 423, 776 P.2d 424, 432 (1989); *State v. Parmer*, 147 Idaho 210, 220, 207 P.3d 186, 196 (Ct. App. 2009); *State v. Rozajewski*, 130 Idaho 644, 645, 945 P.2d 1390, 1391 (Ct. App. 1997). Estes also argues, however, that the evidence is insufficient to support the finding of guilt. This is an issue that is properly presented on appeal. *State v. Doe*, 144 Idaho 819, 822, 172 P.3d 1094, 1097 (2007); *State v. Faught*, 127 Idaho 873, 877-78, 908 P.2d 566, 570-71 (1995).

2

In Idaho, although a traffic infraction is denominated a "civil public offense" and carries no right to trial by jury, it is otherwise treated like a criminal offense for the purposes of trial and is subject to the same burden of proof. Idaho Code §§ 49-1502; Idaho Infraction Rules 1 and 7. Thus, the State must prove the elements of an infraction beyond a reasonable doubt. I.I.R. 7(e). Our review of the sufficiency of the evidence is limited to ascertaining whether there is substantial evidence upon which the trial court could have found that the prosecution met its burden of proving the essential elements of the infraction beyond a reasonable doubt. *State v. Bettwieser*, 143 Idaho 582, 588, 149 P.3d 857, 863 (Ct. App. 2006); *State v. Thompson*, 130 Idaho 819, 821, 948 P.2d 174, 176 (Ct. App. 1997); *State v. Reyes*, 121 Idaho 570, 572, 826 P.2d 919, 921 (Ct. App. 1992).

This State's appellate courts have not previously addressed whether an officer's testimony as to his visual estimation of a vehicle's speed can constitute proof of speed beyond a reasonable doubt.[1] Other states that apply a "beyond a reasonable doubt" standard of proof for traffic infractions, and that have no independent statutory requirement for corroboration of an officer's visual estimation of speed, have reached differing conclusions. The Georgia Court of Appeals held, without analysis of case specifics, that an officer's visual estimate of speed is sufficient proof. *Ferguson v. State*, 587 S.E.2d 195, 196 (Ga. Ct. App. 2003). Three of the twelve appellate districts of the Ohio Court of Appeals are of the view that an officer's estimate of speed, standing alone, is insufficient to sustain a conviction, while five other districts of the same Court are of the view that an estimate is sufficient. *See State v. Kincaid*, 796 N.E.2d 89, 95 (Ohio Co. 2003), and cases cited therein.

Other courts have conducted a more case-specific inquiry in determining sufficiency, addressing matters such as the officer's training and the amount by which the estimated speed exceeded the posted limit, or the magnitude of the variance as a percentage of the posted speed limit. Again, these courts have reached varying conclusions. For example, in *State v. Ali*, 679 N.W.2d 359 (Minn. Ct. App. 2004), the defendant was cited for driving 41 miles per hour in a 30-mile-per-hour zone. The officer testified that he had been trained to visually estimate the speed of a vehicle within 5 miles per hour and that he had perfected that skill over the previous

---

[1] This issue should not be confused with the *admissibility* of an officer's estimation of speed nor with the sufficiency of an estimate to provide reasonable suspicion to stop a vehicle, reasonable suspicion being a much less exacting standard than proof beyond a reasonable doubt.

3

twenty-five years, in part based upon comparing his visual estimates with laser readings. The Minnesota Court of Appeals upheld the trial court's finding of a speeding violation, reasoning that even allowing a 5-mile-per-hour margin of error, the defendant's vehicle would still have been in excess of the speed limit. *Id*. at 368.

In *People v. Olsen*, 239 N.E.2d 354 (N.Y. 1968), the officers' estimates were that the defendant was driving between 50 to 55 miles per hour in a 30-mile-per-hour zone. The Court of Appeals of New York upheld the speeding conviction because the difference "of 20 to 25 miles above the speed limit was clearly sufficient to justify a finding of guilt," *id.* at 355, but the court further explained:

> A police officer's estimate that a defendant was traveling at 50 to 55 miles per hour in a 30-mile-an-hour zone should be sufficient to sustain a conviction for speeding. On the other hand, his testimony, absent mechanical corroboration, that a vehicle was proceeding at 35 or 40 miles per hour in the same zone might for obvious reason be insufficient, since, it must be assumed that only a mechanical device could detect such a slight variance with accuracy sufficient to satisfy the burden necessary to sustain a conviction.

*Id.*

The Missouri Supreme Court reached a similar conclusion in *City of Kansas City v. Oxley*, 579 S.W.2d 113, 115-16 (Mo. 1979), reversing a conviction where the 45-mile-per-hour speed estimation was only 10 miles per hour over the posted limit of 35 miles per hour. In *State v. Kimes*, 234 S.W.3d 584, 588-90 (Mo. Ct. App. 2007), where the estimate was 35 miles per hour in a 20-mile-per-hour zone, the Missouri Court of Appeals, expanding on *Oxley*, considered the variance between the estimation and the speed limit in percentage terms. The Court noted that the variance between the speed limit and the estimate found insufficient in *Oxley* was only twenty-nine percent, whereas in the case before it the variance was seventy-five percent and, viewing this as a significant difference, the Court affirmed the conviction. *Id.*

In the present case, the officer testified to his training in the visual estimation of speed as follows:

> A: Well, when I went through basic POST Academy and the State Police Academy, as part of our radar training and certification, we were required to estimate vehicles as we were in a traveling mode or as we were in a stationary mode. That was back in 1988.
> On subsequent recertifications, we're required to maintain that proficiency of speed estimation, both stationary and moving. And in the 20 years that I've been a state trooper, I've basically - the training has been ongoing, because I use that in my everyday patrol duties.

4

Q: Is there a standard of accuracy that you have to obtain to, I guess, pass that class, or to be certified in the visual estimation of speed?

A: Yes, there is. And also with the recertification process, your estimations have to fall within plus or minus five miles an hour. If you're out of that, then we just disregard the reading and carry on as normal.

The trooper then testified that his visual estimation of the speed of Estes' vehicle was 65 miles per hour. On cross-examination, Estes inquired as to the officer's accuracy rate and the standards for estimating vehicle speed as part of the officer's radar certification as follows:

Q: And what was your accuracy rating as far as estimating?

A: *I -- I can't remember Mr. Estes.*

Q: And how many hours of that training did you have?

A: The -- the initial radar class at the Academy was 40 hours.

Q: That was 20 years ago?

A: Uh-huh. And then the recertifications, I believe, we were required to estimate, I believe, six stationary and six moving.

Q: That's --

A: But if you do not achieve the desired standard, then they will not requalify you on the radar.

This was the totality of the evidence presented concerning the officer's training and his proficiency in estimating vehicle speed.

We conclude that the evidence was insufficient to meet the State's burden to prove Estes' guilt beyond a reasonable doubt. Although the officer implied that he met a certification standard requiring that he be able to make estimations falling within 5 miles per hour of the actual speed, he did not testify as to the required accuracy rate. That is, he did not disclose whether certification required that he be able to meet that 5-mile-per-hour variance standard 65 percent of the time or 99 percent of the time, nor what his actual rate was. An accuracy frequency approaching 100 percent would give far greater support to a finding of guilt beyond a reasonable doubt than would a substantially lower accuracy rate. Here, the trial evidence is void of any information at all on the officer's accuracy rate. In addition, the State produced no evidence of the distance between the officer's location and Estes' vehicle when the officer made his estimation, the angle of his view, or how long he observed the vehicle before reaching his conclusion. We do not hold, as some courts apparently have, that an officer's estimate can never be sufficient to prove a speeding infraction. We hold only that on this evidentiary record, and given that the difference between the estimated speed and the speed limit in this case was not great, the State failed to prove beyond a reasonable doubt that Estes' vehicle was travelling above the speed limit.

## III.

## CONCLUSION

The district court's appellate order affirming the magistrate court judgment is reversed.

Judge GUTIERREZ and Judge MELANSON **CONCUR.**