No. 2-09-0743    Filed: 9-23-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE CITY OF ROCKFORD, | ) | Appeal from the Circuit Court |
| | ) | of Winnebago County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 08--TR--43355 |
| | ) | |
| MATTHEW C. CUSTER, | ) | Honorable |
| | ) | Mary Linn Green, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the opinion of the court:

The City of Rockford (City) charged defendant, Matthew C. Custer, with speeding in violation of a municipal ordinance (see Rockford Code of Ordinances §16--194 (eff. February 2, 1971)). Following a bench trial, defendant was found guilty and the trial court imposed fines and costs in the total amount of $400. Defendant appeals, pro se, arguing that the trial court erred in permitting the officer who ticketed him to testify that he measured defendant's speed using a radar device. We reverse.

At trial, Rockford police officer Robert Woodford testified that on August 26, 2008, he was conducting speed enforcement on East State Street. Woodford was situated on North Rockford Avenue, which forms a "T" intersection with State Street. South Rockford Avenue (which also forms a "T' intersection with State Street) is located just east of the intersection of State Street and North Rockford Avenue. Woodford was facing south and was monitoring the speed of westbound vehicles

on State Street. Woodford testified that he observed defendant's vehicle traveling at a high rate of speed. Using a radar device, Woodford measured the speed of defendant's vehicle as it proceeded through the intersection of State Street and South Rockford Avenue. Woodford determined that defendant's vehicle was traveling at 45 miles per hour. The posted speed limit was 30 miles per hour. Woodford testified that, based on his experience, he believed that the vehicle was speeding even before he measured its speed electronically. Defendant testified that he did not exceed the 30-mile-per-hour speed limit.

We initially note that, because defendant was prosecuted under a municipal ordinance and the alleged violation was punishable only by "a fine or a penalty," the proceeding "is civil in form, and the cause is tried and reviewed as a civil proceeding." Village of Kildeer v. LaRocco, 237 Ill. App. 3d 208, 211 (1992). Thus, the City was not required to prove defendant's guilt beyond a reasonable doubt, but only by a preponderance of the evidence. LaRocco, 237 Ill. App. 3d at 211.

Section 11--604(b) of the Illinois Vehicle Code (Code) (625 ILCS 5/11--604(b) (West 2008)) grants a municipality the authority to raise or lower the speed limit that would otherwise be applicable under the Code (see 625 ILCS 5/11--601 (West 2008)) along any part or zone of a street or highway within the municipality's corporate limits. The altered speed limit takes effect "when appropriate signs giving notice of the limit are erected at the proper place or along the proper part or zone of the highway or street." 625 ILCS 5/11--604(b) (West 2008). Of special significance here, section 11--604(b) further provides, "Electronic speed-detecting devices shall not be used within 500 feet beyond any such sign in the direction of travel; if so used in violation of this Section evidence obtained thereby shall be inadmissible in any prosecution for speeding." 625 ILCS 5/11--604(b) (West 2008).

At trial, the City successfully objected to defendant's attempts to introduce evidence of the distance between the intersection of State Street and South Rockford Avenue and a sign reducing the speed limit from 35 miles per hour to 30 miles per hour. On appeal, defendant has appended to his brief photographs, maps, and diagrams showing that the intersection is less than 500 feet beyond the speed-limit sign in defendant's direction of travel (west). None of these materials were admitted into evidence. However, although it is axiomatic that documents that are dehors the record may not be considered on appeal (see, e.g., Knapp v. Bulun, 392 Ill. App. 3d 1018, 1027-28 (2009)), the City has expressly indicated that it has no objection to defendant's reliance on these materials. Thus, the City does not dispute that defendant's vehicle was within 500 feet of the speed-limit sign. Instead, the City argues that the use of an electronic speed-detecting device occurs where the device itself is located. The State points out that defendant's maps, diagrams, and photographs show that the radar unit was located more than 500 feet from the sign in question. We disagree with the State's interpretation of the statute. The legislative intent underlying the 500-foot rule was "to give a driver time to adjust to the speed limit before subjecting him to radar detection." People v. Johannsen, 126 Ill. App. 2d 31, 34 (1970). Under the City's interpretation, a speed-detection device with a range of 500 feet or more could be used on a vehicle as soon as it passed the speed-limit sign. A similar literal reading of the statute was argued by the defendant in Johannsen. There, the defendant contended that the language that radar shall not be used within 500 feet beyond "any such sign" meant that radar could not be used within 500 feet of a sign, regardless of whether the same speed limit was previously posted for the same direction of travel. The court stated, "Statutes must be reasonably construed in accordance with practical application. Where two constructions of a law are proposed, this court will avoid the one which produces absurd results and renders the law difficult of operation." Johannsen,

126 Ill. App. 2d at 34. The court found the defendant's argument based on a literal reading of the statute to be unreasonable. Johannsen, 126 Ill. App. 2d at 34. The same unreasonable result would follow in our case based upon the dissent's analysis. A motorist facing a speed reduction to 25 or 35 miles per hour would have the benefit of a 500-foot buffer to reduce his or her speed, while a motorist who faces a speed reduction to 30 miles per hour in an urban district would be required to slow his or her vehicle immediately. Such a result would clearly frustrate the legislative intent. Accordingly, we agree with defendant that the evidence obtained from the use of the radar device was inadmissible.

Citing People v. Hampton, 96 Ill. App. 3d 728 (1981), the City alternatively argues that defendant's conviction may be sustained based on Woodford's testimony that (1) defendant was driving at a "high rate of speed," and (2) based on his experience, he believed that defendant was speeding before he measured defendant's speed with the radar unit. In Hampton, an officer's estimate of a vehicle's speed was considered sufficient to prove beyond a reasonable doubt that the defendant had violated the applicable speed limit. The City argues that Woodford's testimony was sufficient to satisfy the lower standard of proof--by a preponderance of the evidence--that applies here. Hampton differs from this case, however, inasmuch as the officer in Hampton did not merely offer the opinion that the defendant was speeding, but also offered an estimate of how fast the defendant was traveling. According to the officer in Hampton, the defendant "was traveling 'around 40, probably 45 or so' in a 30-mile speed limit zone." Hampton, 96 Ill. App. 3d at 729. Woodford, in contrast, did not quantify defendant's estimated speed.

This distinction is an important one. In State v. Estes, 148 Idaho 345, 223 P.3d 287 (App. 2009), the court surveyed cases from other jurisdictions addressing the question of whether a police

officer's estimate of a vehicle's speed is sufficient to sustain a conviction. While some courts have categorically held that an officer's speed estimate either is or is not sufficient to sustain a conviction, other courts consider the question on a case-by-case basis, focusing on "the officer's training and the amount by which the estimated speed exceeded the posted limit, or the magnitude of the variance as a percentage of the posted speed limit." (Emphasis added.) Estes, 148 Idaho at ___, 223 P.3d at 289; see State v. Ali, 679 N.W.2d 359 (Minn. App. 2004) (upholding conviction where defendant was cited for driving 41 miles per hour in a 30-mile-per-hour zone by an officer who had been trained to visually estimate the speed of a vehicle within 5 miles per hour); City of Kansas City v. Oxley, 579 S.W.2d 113 (Mo. 1979) (reversing conviction where the officer estimated that the defendant was traveling only 10 miles per hour in excess of the 35-mile-per-hour speed limit); State v. Kimes, 234 S.W.3d 584, 588-90 (Mo. App. 2007) (sustaining conviction based on 75% variance between officer's estimate that defendant was traveling at 35 miles per hour and posted speed limit of 20 miles per hour); People v. Olsen, 22 N.Y.2d 230, 239 N.E.2d 354, 292 N.Y.S.2d 420 (1968) (although police officer's estimate that defendant was traveling 50 to 55 miles per hour in a 30-mile-per-hour zone was sufficient to sustain a conviction of speeding, testimony that the vehicle was proceeding at 35 to 40 miles per hour might not have sufficed). In Estes, the defendant was charged with traveling 65 miles per hour in a 55-mile-per-hour zone. The court reversed the defendant's conviction, noting, inter alia, that the difference between the estimated speed and the speed limit was not great.

Recognizing that a police officer's ability to estimate the speed of a moving vehicle is subject to error, these courts have sustained convictions only where the officers' estimates were at least 10 miles per hour over the applicable speed limits. We note that although Hampton did not expressly employ this approach, the result in Hampton is consistent with it. Here, however, Woodford did not

supply an estimate of defendant's actual speed, so it is impossible to say whether a conviction of speeding could be sustained under an appropriate margin of error. Under the circumstances, the evidence not only fails to establish defendant's guilt beyond a reasonable doubt, but is also insufficient to meet even the City's lower burden of proof by a preponderance of the evidence.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is reversed.

Reversed.

BURKE, J., concurs.

PRESIDING JUSTICE ZENOFF, dissenting:

I respectfully dissent. The majority agrees with defendant that the evidence obtained from Officer Woodford's radar device was inadmissible under section 11--604(b) of the Code (625 ILCS 5/11--604(b) (West 2008)). A closer reading of the statute in question reveals that both defendant and the majority focus on the wrong sign; and thus, section 11--604(b) of the Code and its prohibition on electronic speed-detecting devices does not even apply here. The trial court properly admitted the radar evidence.

Section 11--601(c) of the Code (625 ILCS 5/11--601(c) (West 2008)) provides that, in an urban district, the maximum speed limit for all vehicles is 30 miles per hour, unless some other speed restriction is established. The maps, diagrams, and photographs upon which defendant bases his argument show that he was operating his vehicle in an urban district, which is defined as "[t]he territory contiguous to and including any street which is built up with structures devoted to business, industry or dwelling houses situated at intervals of less than 100 feet for a distance of a quarter of a mile or more." 625 ILCS 5/1--214 (West 2008).

Section 11--604(b) of the Code provides, in pertinent part, as follows:

"Whenever any *** city *** determines, upon the basis of an engineering or traffic investigation concerning a highway or street *** that a maximum speed limit prescribed in Section 11--601 *** is greater or less than is reasonable or safe with respect to the conditions found to exist at any place or along any part or zone of such highway or street, the [city] shall determine and declare by ordinance a reasonable and safe absolute maximum speed limit at such place or along such part or zone, which:

(1) Decreases the limit within an urban district, but not to less than 20 miles per hour; or

(2) Increases the limit within an urban district, but not to more than 55 miles per hour[.]

* * *

A limit so determined and declared *** becomes effective, and suspends the application of the limit prescribed in Section 11--601 of this Chapter, when appropriate signs giving notice of the limit are erected at the proper place or along the proper part or zone of the highway or street. Electronic speed-detecting devices shall not be used within 500 feet beyond any such sign in the direction of travel; if so used in violation of this Section evidence obtained thereby shall be inadmissible in any prosecution for speeding." (Emphasis added.) 625 ILCS 5/11--604(b) (West 2008).

The trial court sustained the City's objection to defendant's attempt to prove that the sign at Dawson Avenue reducing the speed limit on State Street from 35 miles per hour (set by the sign posted at Vale Avenue) to 30 miles per hour was located less than 500 feet from the location of his vehicle when his vehicle's speed was measured. On appeal, defendant relies on photographs, maps,

and diagrams that were not admitted into evidence at trial. As the majority notes, although it is axiomatic that documents that are <u>dehors</u> the record may not be considered on appeal (see, <u>e.g.</u>, <u>Knapp v. Bulun</u>, 392 Ill. App. 3d 1018, 1027-28 (2009)), the City indicates that it has no objection to defendant's reliance on these materials. In any event, even if the facts are as represented by defendant in the nonrecord materials, I would submit that, by its terms, section 11--604(b) does not apply here.

When a statute is clear and unambiguous, a court must give effect to the plain and ordinary meaning of the language without resort to other tools of statutory construction. <u>Gallagher v. Union Square Condominium Homeowner's Ass'n</u>, 397 Ill. App. 3d 1037, 1041 (2010). Section 11--604(b) authorizes a city to alter the statutory 30-mile-per-hour speed limit in an urban district. The altered speed limit takes effect "when appropriate signs giving notice of the limit are erected." 625 ILCS 5/11--604(b) (West 2008). Section 11--604(b) further prohibits the use of electronic speed-detecting devices within 500 feet beyond "any <u>such</u> sign." (Emphasis added.) 625 ILCS 5/11--604(b) (West 2008). The use of the adjective "such" plainly indicates that the 500-foot rule applies only in the case of a sign erected to modify the statutory speed limit set forth in section 11--601. It does not, by its terms, apply to signs posting the standard speed limit set by section 11--601, even where the section 11--601 limit is a reduction from the section 11--604(b) modified limit. An examination of section 11--601 reveals no language restricting the use of electronic speed-detecting devices. Under section 11--601, the speed limit at the intersection of East State Street and South Rockford Avenue--in an urban district--was 30 miles per hour unless modified by the City. Thus, the 30-mile-per-hour sign at Dawson Avenue did not give notice of a special speed limit established by the City under section 11--604(b); it merely gave notice of the standard speed limit prescribed by statute for vehicles

traveling in an urban district. The 35-mile-per-hour speed-limit sign at Vale Avenue was the one that modified the 30-mile-per-hour standard speed limit prescribed in section 11--601 for urban districts. Defendant's figure 3, attached to his brief, makes it clear that he was measuring the distance from the 30-mile-per-hour sign to the location of his car when his speed was clocked. He states on figure 3 at "B," "the intersection [where he was when his speed was clocked] is therefore well within an area 500 feet beyond the speed limit sign (a sign that reduces the speed limit on State Street)." Apparently defendant, and the majority, think that section 11--604(b) prohibited the use of the electronic speed-detection device within 500 feet of the 30-mile-per-hour sign because it reduced the speed limit from 35 to 30 miles per hour. However, as discussed above, a close reading of the statute makes it clear that the restriction on electronic devices is referenced only with respect to a speed-limit sign that modifies the standard speed. The word "such" refers back to a sign, described in the preceding sentence, that "suspends the application of the limit prescribed in Section 11--601." 625 ILCS 5/11--604(b) (West 2008). Accordingly, if the sign at Vale had been for a 30-mile-per-hour limit, and the one at Dawson for 25 miles per hour, then by virtue of the statutory language in section 11--604(b), the 500-foot statutory restriction would have been applicable to and measured from the sign at Dawson. Because the sign actually posted at Vale (35 miles per hour) signaled an increase in the standard speed, and the one at Dawson, a return to the section 11--601 urban limit (30 miles per hour), the reduction itself does not render the electronic speed-detecting-device restriction applicable. Certainly if that had been the intent of the legislature, section 11--604(b) would have been drafted differently. Clearly, the protection of section 11--604(b) does not apply here and the radar evidence was admissible.

It is true that "[a] literal interpretation [of a statute] is not controlling where the spirit and intent of the General Assembly in enacting a statute are clearly expressed, its objects and purposes are clearly set forth, and a literal interpretation of a particular clause would defeat the obvious intent [citation]; where literal enforcement of a statute will result in great injustice that was not contemplated by the General Assembly [citation]; or where a literal interpretation would lead to an absurd result [citation]." Grever v. Board of Trustees of the Illinois Municipal Retirement Fund, 353 Ill. App. 3d 263, 266-67 (2004). In my view, none of these criteria for departing from the plain statutory language are present here. Defendant argues that the limitation on the use of electronic speed-detecting devices within 500 feet of a speed-limit sign protects motorists from speed traps. Given a literal interpretation, the statute serves this purpose by preventing local governments from setting up speed traps in areas where they have exercised their authority to establish a special speed limit lower than the statutory limit. In such cases, even conscientious motorists could be taken unawares by the change. It does not necessarily follow, however, that motorists are entitled to the same protection on roads where the speed limit is fixed at the standard level established by statute-- even if the sign posting the standard level constitutes a reduction from a sign posting a modified limit. It can be argued that motorists should always be prepared to slow their vehicles to the appropriate statutory speed limit and need not be afforded 500 feet of leeway to do so. See 625 ILCS 5/11--601(a) (West 2008) (stating that motorists have a duty to decrease their speed from the posted limit under certain circumstances such as when approaching intersections, curves, or hills). Thus, a rule regulating the use of electronic speed-detecting devices only where a special speed limit applies does not produce absurd results. Moreover, requiring a police officer to investigate whether a 30-mile-per-hour sign in an urban district is one that represents a return to the standard limit from a preceding sign

that modified it would be an undue burden on law enforcement and inconsistent with enhancement of public safety. The General Assembly has not clearly expressed an intent to provide motorists with 500 feet of leeway to reduce their speed in all circumstances, and the General Assembly's failure to do so does not, in my view, result in a great injustice.

Because I would conclude that introduction of the radar evidence was not prohibited by section 11--604(b), it is not necessary to address the parties' dispute regarding either the location of the use of the radar device or the sufficiency of the officer's testimony alone to sustain the speeding conviction.

I would affirm the judgment of the trial court.