JUSTICE McLAREN delivered the opinion of the court: The City of Rockford (City) charged defendant, Matthew C. Custer, with speeding in violation of a municipal ordinance (see Rockford Code of Ordinances §16 — 194 (eff. February 2, 1971)). Following a bench trial, defendant was found guilty and the trial court imposed fines and costs in the total amount of $400. Defendant appeals, pro se, arguing that the trial court erred in permitting the officer who ticketed him to testify that he measured defendant’s speed using a radar device. We reverse. At trial, Rockford police officer Robert Woodford testified that on August 26, 2008, he was conducting speed enforcement on East State Street. Woodford was situated on North Rockford Avenue, which forms a “T” intersection with State Street. South Rockford Avenue (which also forms a “T” intersection with State Street) is located just east of the intersection of State Street and North Rockford Avenue. Woodford was facing south and was monitoring the speed of westbound vehicles on State Street. Woodford testified that he observed defendant’s vehicle traveling at a high rate of speed. Using a radar device, Wood-ford measured the speed of defendant’s vehicle as it proceeded through the intersection of State Street and South Rockford Avenue. Woodford determined that defendant’s vehicle was traveling at 45 miles per hour. The posted speed limit was 30 miles per hour. Woodford testified that, based on his experience, he believed that the vehicle was speeding even before he measured its speed electronically. Defendant testified that he did not exceed the 30-mile-per-hour speed limit. We initially note that, because defendant was prosecuted under a municipal ordinance and the alleged violation was punishable only by “a fine or a penalty,” the proceeding “is civil in form, and the cause is tried and reviewed as a civil proceeding.” Village of Kildeer v. LaRocco, 237 Ill. App. 3d 208, 211 (1992). Thus, the City was not required to prove defendant’s guilt beyond a reasonable doubt, but only by a preponderance of the evidence. LaRocco, 237 Ill. App. 3d at 211. Section 11 — 604(b) of the Illinois Vehicle Code (Code) (625 ILCS 5/11 — 604(b) (West 2008)) grants a municipality the authority to raise or lower the speed limit that would otherwise be applicable under the Code (see 625 ILCS 5/11 — 601 (West 2008)) along any part or zone of a street or highway within the municipality’s corporate limits. The altered speed limit takes effect “when appropriate signs giving notice of the limit are erected at the proper place or along the proper part or zone of the highway or street.” 625 ILCS 5/11 — 604(b) (West 2008). Of special significance here, section 11 — 604(b) further provides, “Electronic speed-detecting devices shall not be used within 500 feet beyond any such sign in the direction of travel; if so used in violation of this Section evidence obtained thereby shall be inadmissible in any prosecution for speeding.” 625 ILCS 5/11 — 604(b) (West 2008). At trial, the City successfully objected to defendant’s attempts to introduce evidence of the distance between the intersection of State Street and South Rockford Avenue and a sign reducing the speed limit from 35 miles per hour to 30 miles per hour. On appeal, defendant has appended to his brief photographs, maps, and diagrams showing that the intersection is less than 500 feet beyond the speed-limit sign in defendant’s direction of travel (west). None of these materials were admitted into evidence. However, although it is axiomatic that documents that are dehors the record may not be considered on appeal (see, e.g., Knapp v. Bulun, 392 Ill. App. 3d 1018, 1027-28 (2009)), the City has expressly indicated that it has no objection to defendant’s reliance on these materials. Thus, the City does not dispute that defendant’s vehicle was within 500 feet of the speed-limit sign. Instead, the City argues that the use of an electronic speed-detecting device occurs where the device itself is located. The State points out that defendant’s maps, diagrams, and photographs show that the radar unit was located more than 500 feet from the sign in question. We disagree with the State’s interpretation of the statute. The legislative intent underlying the 500-foot rule was “to give a driver time to adjust to the speed limit before subjecting him to radar detection.” People v. Johannsen, 126 Ill. App. 2d 31, 34 (1970). Under the City’s interpretation, a speed-detection device with a range of 500 feet or more could be used on a vehicle as soon as it passed the speed-limit sign. A similar literal reading of the statute was argued by the defendant in Johannsen. There, the defendant contended that the language that radar shall not be used within 500 feet beyond “any such sign” meant that radar could not be used within 500 feet of a sign, regardless of whether the same speed limit was previously posted for the same direction of travel. The court stated, “Statutes must be reasonably construed in accordance with practical application. Where two constructions of a law are proposed, this court will avoid the one which produces absurd results and renders the law difficult of operation.” Johannsen, 126 Ill. App. 2d at 34. The court found the defendant’s argument based on a literal reading of the statute to be unreasonable. Johannsen, 126 Ill. App. 2d at 34. The same unreasonable result would follow in our case based upon the dissent’s analysis. A motorist facing a speed reduction to 25 or 35 miles per hour would have the benefit of a 500-foot buffer to reduce his or her speed, while a motorist who faces a speed reduction to 30 miles per hour in an urban district would be required to slow his or her vehicle immediately. Such a result would clearly frustrate the legislative intent. Accordingly, we agree with defendant that the evidence obtained from the use of the radar device was inadmissible. Citing People v. Hampton, 96 Ill. App. 3d 728 (1981), the City alternatively argues that defendant’s conviction may be sustained based on Woodford’s testimony that (1) defendant was driving at a “high rate of speed,” and (2) based on his experience, he believed that defendant was speeding before he measured defendant’s speed with the radar unit. In Hampton, an officer’s estimate of a vehicle’s speed was considered sufficient to prove beyond a reasonable doubt that the defendant had violated the applicable speed limit. The City argues that Woodford’s testimony was sufficient to satisfy the lower standard of proof — by a preponderance of the evidence — that applies here. Hampton differs from this case, however, inasmuch as the officer in Hampton did not merely offer the opinion that the defendant was speeding, but also offered an estimate of how fast the defendant was traveling. According to the officer in Hampton, the defendant “was traveling ‘around 40, probably 45 or so’ in a 30-mile speed limit zone.” Hampton, 96 Ill. App. 3d at 729. Woodford, in contrast, did not quantify defendant’s estimated speed. This distinction is an important one. In State v. Estes, 148 Idaho 345, 223 R3d 287 (App. 2009), the court surveyed cases from other jurisdictions addressing the question of whether a police officer’s estimate of a vehicle’s speed is sufficient to sustain a conviction. While some courts have categorically held that an officer’s speed estimate either is or is not sufficient to sustain a conviction, other courts consider the question on a case-by-case basis, focusing on “the officer’s training and the amount by which the estimated speed exceeded the posted limit, or the magnitude of the variance as a percentage of the posted speed limit.” (Emphasis added.) Estes, 148 Idaho at 347, 223 P.3d at 289; see State v. Ali, 679 N.W.2d 359 (Minn. App. 2004) (upholding conviction where defendant was cited for driving 41 miles per hour in a 30-mile-per-hour zone by an officer who had been trained to visually estimate the speed of a vehicle within 5 miles per hour); City of Kansas City v. Oxley, 579 S.W.2d 113 (Mo. 1979) (reversing conviction where the officer estimated that the defendant was traveling only 10 miles per hour in excess of the 35-mile-per-hour speed limit); State v. Kimes, 234 S.W.3d 584, 588-90 (Mo. App. 2007) (sustaining conviction based on 75% variance between officer’s estimate that defendant was traveling at 35 miles per hour and posted speed limit of 20 miles per hour); People v. Olsen, 22 N.Y.2d 230, 239 N.E.2d 354, 292 N.Y.S.2d 420 (1968) (although police officer’s estimate that defendant was traveling 50 to 55 miles per hour in a 30-mile-per-hour zone was sufficient to sustain a conviction of speeding, testimony that the vehicle was proceeding at 35 to 40 miles per hour might not have sufficed). In Estes, the defendant was charged with traveling 65 miles per hour in a 55-mile-per-hour zone. The court reversed the defendant’s conviction, noting, inter alia, that the difference between the estimated speed and the speed limit was not great. Recognizing that a police officer’s ability to estimate the speed of a moving vehicle is subject to error, these courts have sustained convictions only where the officers’ estimates were at least 10 miles per hour over the applicable speed limits. We note that although Hampton did not expressly employ this approach, the result in Hampton is consistent with it. Here, however, Woodford did not supply an estimate of defendant’s actual speed, so it is impossible to say whether a conviction of speeding could be sustained under an appropriate margin of error. Under the circumstances, the evidence not only fails to establish defendant’s guilt beyond a reasonable doubt, but is also insufficient to meet even the City’s lower burden of proof by a preponderance of the evidence. For the foregoing reasons, the judgment of the circuit court of Winnebago County is reversed. Reversed. BURKE, J., concurs.