NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 250512-U

NO. 4-25-0512

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 26, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| NEAL EVAN PRICE, | ) | No. 24TR5966 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Nathan Richard Bach, |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Presiding Justice Harris and Justice Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, finding the evidence was sufficient to convict defendant of speeding beyond a reasonable doubt.

¶ 2    Defendant, Neal Evan Price, *pro se*, appeals his conviction for speeding. He argues that the evidence was insufficient to convict him because the State failed to prove, pursuant to section 11-601(b) of the Illinois Vehicle Code (Code) (625 ILCS 5/11-601(b) (West 2024)), that he was driving in an urban district at the time he received the traffic citation.

¶ 3    We affirm.

¶ 4                                   I. BACKGROUND

¶ 5    On September 22, 2024, defendant received a traffic citation for driving 45 miles per hour in a 30 mileper-hour zone. The citation specified that he had violated section 11-601(b) of the Code (*id.*).

¶ 6        At defendant's jury trial, the State presented testimony from Officer Matthew Rosenberger, a deputy with the Peoria Heights Police Department. Rosenberger testified that he conducted a traffic stop on defendant after his speed radar tracked defendant driving 45 miles per hour in an area with a posted speed limit of 30 miles per hour. Video from Rosenberger's dashcam and body-worn camera was admitted into evidence. In the dashcam video, Rosenberger drives down a road that appears to be lined with homes on either side. A sign displaying the 30 mile-per-hour speed limit can be seen approximately 15 seconds before Rosenberger drives past defendant's vehicle. After defendant's car passes, Rosenberger makes a U-turn and begins following him. The video ends as Rosenberger walks toward defendant's vehicle after pulling him over.

¶ 7        The video from Rosenberger's body-worn camera shows the interior of Rosenberger's vehicle as he drives. His radar device flashes a speed of 45 miles per hour, at which point Rosenberger uses a remote control to lock in the speed. Rosenberger then drives for approximately a minute and a half before exiting his vehicle and approaching defendant, who is seen sitting in the driver's seat of his vehicle. Rosenberger asks for defendant's license and registration, and the video ends.

¶ 8        Rosenberger also testified that the road defendant was driving on at the time of his observation was a public highway maintained by the City of Peoria and made available for public use.

¶ 9        On cross-examination, defendant attempted to question Rosenberger on the section of the Code under which he was charged. Almost immediately, the trial court interrupted defendant and removed the jury from the courtroom. A lengthy discussion then took place between defendant, the court, and the State on the elements of the law under which defendant was charged and whether defendant could ask Rosenberger questions relating to whether or not the area he was

driving in was an "urban district." The following excerpt is representative of defendant's and the court's positions:

"THE COURT: *** [Defendant], 601(b) says, No person may drive a vehicle upon any highway of this State at a speed which is greater than the applicable statutory maximum speed limit established by paragraphs (c), (d), (f), or (g) of this Section.

[DEFENDANT]: Exactly. So—

THE COURT: Okay. So that's what the statute says. So it doesn't say anything about an urban area or anything else.***

[DEFENDANT]: Established by paragraphs (c), (d), (e), (f), or (g). So one of those paragraphs, (c), (d), (e), (f), or (g)—

THE COURT: Right. It says, Unless some other speed restriction is established under this Chapter, meaning, a speed limit sign, the maximum speed limit in an urban district for all vehicles is 30 miles per hour.

[DEFENDANT]: Is that—so it's an urban district?

THE COURT: Right. [Officer Rosenberger] testified that the speed limit posted in that area is 30 miles per hour.

[DEFENDANT]: Yeah, but if it's an urban district—

THE COURT: You don't have any evidence whatsoever that that's not an urban district, and I'm not going to let you argue—

[DEFENDANT]: It's not—

THE COURT: —to him and in front of the jury that that's not an urban district.

[DEFENDANT]: But it—but if they have the burden of proof—

THE COURT: Right. They have the burden of proof. I agree with that.

[DEFENDANT]: It's the element—

THE COURT: But you cannot introduce collateral issues that you don't have evidence to support.

[DEFENDANT]: It's not a collateral—it's, actually, a direct, because, the urban district; I'm being charged with going over the speed limit in an urban district. So, seeing if he knows if that's an urban district, I think that's reasonable because that's the element of the crime. That's the element."

The court and defendant continued their discussion:

"THE COURT: Well, I'm not going to allow you to argue about whether this is an urban district. I mean, the jury instructions say, the Defendant drove upon a vehicle—drove a vehicle upon a highway and that, when the Defendant did so, he drove at a speed which was greater than the applicable maximum speed limit.

[DEFENDANT]: And the applicable maximum speed limit is—

THE COURT: Thirty miles per hour.

[DEFENDANT]: In an urban district.

THE COURT: We're not going to get into that—

[DEFENDANT]: Uh-huh.

THE COURT: —because you don't have the evidence or any witness to support that this isn't an urban district.

[DEFENDANT]: But don't they have to have the evidence to support that

it is an urban district?

THE COURT: They have to have evidence that the posted speed limit is somewhere. Or if it's not a posted speed limit, then you refer to what the defaults are, and then they have to prove that you were driving—

[DEFENDANT]: But it says in an urban district, though.

THE COURT: —in excess.

[DEFENDANT]: It's—the law says, in an urban—

\*\*\*

THE COURT: Unless some other speed restriction is established. That would be a posted speed limit of—

[DEFENDANT]: And under this Chapter—no, no.

THE COURT:—thirty miles per hour.

[DEFENDANT]: It says, Unless a speed restriction is established under this Chapter. It doesn't say the posted sign. It says under this Chapter."

Defendant later emphasized this point again, stating, "No, a posted—a posted speed limit is not the same as 'established under this Chapter.' That's—a sign outside is not established under this Chapter. It's just a sign. It's saying it has to be established under this Chapter."

¶ 10         Ultimately, the trial court determined that defendant could not ask Rosenberger questions related to whether the area in which he received his citation was an urban district, as it found this to be a collateral issue that should have been brought up prior to trial. When defendant again argued that the State had the burden of proving he was driving in an urban area, the court replied, "They have to prove that you violated the speed limit by driving in excess of the posted speed limit. If you're saying the posted speed limit is incorrect, that's upon you to prove."

¶ 11    The jury was brought back in, and defendant briefly resumed questioning Rosenberger. He asked if bumpy road conditions might cause the radar device Rosenberger used to produce an inaccurate reading. Rosenberger admitted that this was possible but also noted that at the time he locked in defendant's speed, he was not driving over any bumps in the road.

¶ 12    Following Rosenberger's testimony, the State rested. Defendant did not present any evidence. The jury returned a verdict of guilty, and defendant was fined $250, plus court costs.

¶ 13    On April 23, 2025, defendant filed a motion for a new trial. In his motion, he again alleged that the State was required to prove he was driving in an urban district at the time he was pulled over. Although the record on appeal contains no transcript from the hearing on defendant's motion, it does contain an order denying the motion, which states the following:

> "It is this court's belief that consistent with Illinois law, the posted speed limit is presumed to be valid and may be called into question with competent evidence and if so, would require the state to establish the validity of the posted speed limit. However, at trial, [defendant] had no evidence—and stated the same— that the posted speed limit was invalid or inconsistent with Illinois law and statutes. As such, the motion is denied."

¶ 14    This appeal followed.

¶ 15                              II. ANALYSIS

¶ 16    On appeal, defendant raises the same argument that he presented to the trial court. He argues that section 11-601(b) of the Code requires the State to prove that he was driving in an urban district at the time he received his speeding citation. Because the State offered no evidence on this point, defendant argues that he was not proven guilty beyond a reasonable doubt of all the elements of the crime.

¶ 17          He further argues that the trial court erred in not allowing this element to be presented to the jury. It's unclear if defendant intended this as a separate argument or simply a continuation of his first, but we note that he did not preserve any issue relating to improper jury instructions in his motion for a new trial and has therefore forfeited it. See *People v. Sorrels*, 389 Ill. App. 3d 547, 552 (2009) (stating a defendant forfeits an argument for appeal when he fails to timely object at trial or raise the issue in a posttrial motion). We will address the issue he preserved, relating to the requirements of section 11-601(b) and whether the State proved them beyond a reasonable doubt.

¶ 18                              A. Section 11-601(b)

¶ 19          Section 11-601(b) of the Code provides as follows:

          "No person may drive a vehicle upon any highway of this State at a speed which is greater than the applicable statutory maximum speed limit established by paragraphs (c), (d), (e), (f) or (g) of this Section, by Section 11-605 or by a regulation or ordinance made under this Chapter." 625 ILCS 5/11-601(b) (West 2024).

The referenced subsection (c) then provides, "Unless some other speed restriction is established under this Chapter, the maximum speed limit in an urban district for all vehicles" is 30 miles per hour. *Id.* § 11-601(c)(1).

¶ 20          Defendant argues "The statute clearly states that the speed limit is established by paragraphs (c), (d), (e), (f), or (g)[ ] or by regulation or ordinance made under this chapter. Since [defendant] was allegedly in a 30 [mile per hour] zone then paragraph (c) of the statute HAS to apply."

¶ 21          Defendant misunderstands the law in this area. Defendant received a citation

- 7 -

pursuant to section 11-601(b) of the Code, meaning he was cited for driving at a speed "greater than the applicable statutory maximum speed limit established by paragraphs (c), (d), (e), (f) or (g) of this Section *** or by a regulation or ordinance made under this Chapter." *Id.* § 11-601(b). Defendant concludes that because he was cited for driving 45 miles per hour, subsection (c) of this section must apply, as it establishes the maximum speed limit in certain areas (urban districts) as 30 miles per hour. *Id.* § 11-601(c). Of the subsections listed in section 601(b), subsection (c) is the only one under which driving 45 miles per hour, defendant's speed at the time of his citation, would be a violation. See *id.* §§ 11-601(c)-(g). Hence, defendant believes the State was required to prove he was driving in an urban district in order to prove that he was required to drive 30 miles per hour.

¶ 22        However, this reading ignores the latter half of section 11-601(b). Section 11-601(b) states that a person may not drive at a speed greater than one of the default limits established in subsections (c), (d), (e), (f), or (g), "*or by a regulation or ordinance made under this Chapter.*" (Emphasis added.) *Id.* § 11-601(b). Similarly, section 11-601(c) provides the maximum speed limit for urban districts "*[u]nless some other speed restriction is established under this Chapter.*" (Emphasis added.) *Id.* § 11-601(c). Relevant to this point, section 11-604(a) of the Code allows a "park district, city, village, or incorporated town" to establish maximum speed limits on roads within its limits. *Id.* § 11-604(a) (West 2024). Section 11-604(b) states:

> "Whenever any such park district, city, village, or incorporated town determines, upon the basis of an engineering or traffic investigation concerning a highway or street on which it is authorized by this Section to establish speed limits, that a maximum speed limit prescribed in Section 11-601 of this Chapter is greater or less than is reasonable or safe with respect to the conditions found to exist at any

place or along any part or zone of such highway or street, the local authority or park district shall determine and declare by ordinance a reasonable and safe absolute maximum speed limit at such place or along such part or zone." *Id.* § 11-604(b).

In short, section 11-604 "grants a municipality the authority to raise or lower the speed limit that would otherwise be applicable under the Code." *City of Rockford v. Custer*, 404 Ill. App. 3d 197, 199-200 (2010). It is only in the absence of such an imposed speed limit that the default limits listed in subsections (c), (d), (e), (f), and (g) of section 11-601 will apply. See 625 ILCS 5/11-604(b)(4) (West 2024) ("A limit so determined and declared by a park district, city, village, or incorporated town becomes effective, and suspends the application of the limit prescribed in Section 11-601 of this Chapter, when appropriate signs giving notice of the limit are erected.").

¶ 23    Defendant believes that the posted 30 mile-per-hour speed limit where he was driving was not a "regulation or ordinance made under this chapter." It is unclear how defendant reached this conclusion or what he based it on. However, he is incorrect. The word "chapter" in subsections (b) and (c) refers to the Code. See *id.* § 1-111.1. Section 11-604 falls under the Code. Therefore, any posted speed limit made pursuant to this section qualifies as a "regulation or ordinance made under this chapter," as stated in section 11-601(b).

¶ 24    To summarize, the State was not required to prove that defendant was driving in an urban district in order to prove him guilty of violating section 11-601(b) because there was a posted speed limit and, therefore, the default limit listed in subsection (c) of section 11-601 did not apply. The State needed to prove only what the posted speed limit was and that defendant exceeded it.

¶ 25                        B. Sufficiency of the Evidence

¶ 26    Although defendant's sufficiency-of-the-evidence argument is based primarily on the mistaken belief that the State was required to prove he was driving in an urban district when

he was pulled over, he also states in his brief that "even if the judge said there was a speed limit sign, which [defendant] does not recall, the judge didn't make the State prove that either. It was just assumed that this was a 30 [mile per hour] zone." We will therefore address whether the evidence was sufficient to prove that the speed limit in the area where defendant was driving was 30 miles per hour.

¶ 27    When reviewing the sufficiency of the evidence, we consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Determinations of witness credibility and the weight to be given to a witness's testimony are within the province of the jury. *Id.* at 261-62. We will not reverse a criminal conviction for insufficient evidence unless the evidence is "so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *Id.* at 261.

¶ 28    Here, the evidence was sufficient to show that the speed limit was 30 miles per hour. Not only did Officer Rosenberger testify as such, but the video from his vehicle's camera also clearly showed a sign listing the speed limit in the area as 30 miles per hour. The jury clearly found Rosenberger's testimony credible. We do not find this to be unreasonable.

¶ 29    We note that defendant argues in his reply brief that the testimony of Officer Rosenberger alone was insufficient to establish the speed limit. However, he cites no legal authority for this statement. Furthermore, he is incorrect. The testimony of a single witness, if credible, is sufficient to convict. See *People v. Smith*, 185 Ill. 2d 532, 541 (1999).

¶ 30                                  III. CONCLUSION

¶ 31    For the reasons stated, we affirm the trial court's judgment.

¶ 32    Affirmed.